IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESUS SIERRA,** | : | **CIVIL ACTION** |
| Petitioner | : | |
| | : | |
| vs. | : | NO. 13-6264 |
| | : | |
| **MARIROSA LAMAS, et al.,** | : | |
| Respondents | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                           **July 7, 2015**

Petitioner Jesus Sierra brings this counseled petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. On October 29, 2014, United States Magistrate Judge Richard A. Lloret issued a Report and Recommendation, recommending that the petition be dismissed as untimely. Mr. Sierra filed Objections to the Report and Recommendation, and the Commonwealth Defendants responded. For the following reasons, I will overrule the Objections, approve and adopt the Report and Recommendation, and dismiss the petition with prejudice without an evidentiary hearing.

# I.  BACKGROUND[1]

In its decision supporting an earlier Order denying Mr. Sierra's PCRA petition, the PCRA court provided the following factual background surrounding the incident which led to Mr. Sierra's arrest and conviction:

> Victim, Charles Plunkett, was driving his cab in the morning hours of August 12, 2000 with his fiancée seated next to him. After having dropped off a rider, he stopped

---

[1] The facts and procedural history are taken from the relevant decisions of the Court of Common Pleas of Philadelphia County and the Superior Court of Pennsylvania as indicated.

> behind a white van which was stopped at the intersection of Front and Cambria in Philadelphia. After several changes of the light, Mr. Plunkett sounded his horn and the vehicle then moved. After turning, Mr. Plunkett pulled alongside the white van, asking if the driver, whom he identified at trial through a photograph as [Mr. Sierra], was okay.
>
> [Mr. Sierra] asked if Mr. Plunkett had a "f---ing problem" then told his passenger to hand him the gun. Upon hearing this, Mr. Plunkett pushed his fiancée to the floor and sped away from the van, which was driven by [Mr. Sierra] according to trial testimony. Five shots were fired at his car, shattering the back window and several bullets entered cab, one became lodged in the bullet proof divider of the cab, separating the driver from the back seat. He radioed to his dispatcher that he needed police and he was put in contact with police immediately.
>
> He followed the van to Second and Cambria Streets where [Mr. Sierra] stopped his van, got out of the van and greeted several people as if nothing had happened. He was able to direct the police as to where the van had gone and who the shooter was. The victim testified that he never lost sight of the van or [Mr. Sierra]. The victim was able to identify the shooter immediately at the scene.
>
> Police testified at trial consistently with the victim's description of events. Upon a search of the van, one gun, a loaded .45 mm Glock, was found. Further a search of the street where the shooting occurred revealed two shell casings from a .45 mm handgun.

<u>Commonwealth v. Sierra</u>, May, 2001 No. 0160 (Ct.Com.Pl., Phila. Cnty., September 21, 2006).

Upon appeal of the first denial of Mr. Sierra's PCRA petition, the Superior Court of Pennsylvania summarized the procedural history as follows:

> This case arises out of Appellant's participation in the shooting of a cab driver, occurring on August 12, 2000,

2

> in Philadelphia County. On February 14, 2002, Appellant was tried *in absentia* before a jury, and was ultimately convicted of attempted murder, criminal conspiracy, aggravated assault, possession of an instrument of crime, and violation of the Uniform Firearms Act ("VUFA"). On March 27, 2002, the trial court sentenced Appellant *in absentia* to a term of twenty to forty years' imprisonment for attempted murder, a consecutive term of ten to twenty years' imprisonment for criminal conspiracy, and a concurrent term of three and one-half to seven years' imprisonment for VUFA. The charges of aggravated assault and possession of an instrument of crime merged for sentencing purposes. Appellant did not file a direct appeal.
>
> On or about October 19, 2005, Appellant filed a counseled PCRA petition. On February 6, 2006, Appellant filed a "Petition for Removal and Re-appointment of Counsel", "Motion to Proceed *In Forma Pauperis*" and "Declaration in Support of [*In*] *Forma Pauperis*."
>
> ***
>
> On March 23, 2006, the PCRA court sent notice to Appellant, pursuant to Pa.R.Crim.P. 907, indicating that it intended to dismiss his PCRA petition. On April 13, 2006, Appellant filed a *pro se* response to the Rule 907 notice, requesting that the PCRA Court order an evidentiary hearing. On April 20, 2006, the PCRA court denied Appellant's PCRA petition.

See Commonwealth v. Sierra, 1451 EDA 2006, *1-3 (Pa. Super. January 4, 2008).

The Superior Court further noted that the PCRA court had never ruled on Mr. Sierra's petitions for removal of his current counsel and re-appointment of counsel, or his request to proceed *in forma pauperis*. Id. at 5. The Superior Court found that, because the petition was Mr. Sierra's first PCRA petition, it was incumbent upon the PCRA court to address those petitions. Id. If the PCRA court had found that Mr. Sierra was

financially insolvent, then he would have been entitled to court-appointed counsel. Id. at 5-6. Thus, the Superior Court remanded the case for the PCRA court to resolve Mr. Sierra's request for counsel and request to proceed *in forma pauperis*. Id. at 6.

Upon remand, the PCRA court appointed new counsel after finding Mr. Sierra indigent on March 12, 2008. Commonwealth v. Sierra, 105 EDA 2010, *2 (Pa. Super. January 3, 2011). On September 11, 2009, after concluding that there were no non-frivolous issues to advance, counsel filed a "no merit" Finley[2] letter seeking to withdraw. Id. The PCRA court granted counsel leave to withdraw and issued a second Rule 907[3] notice on October 16, 2009. Id. Mr. Sierra filed a *pro se* response, but the PCRA court dismissed the petition as untimely on December 17, 2009. Id. at 3.

On appeal, Mr. Sierra argued that his petition was timely because he was a fugitive during the time period in which he could have filed a PCRA petition. Id. at 5. In affirming the PCRA court's dismissal, the Superior Court reasoned, "a fugitive who returns to court [must] take the system of criminal justice as he finds it upon his return: if time for filing has elapsed he may not file; if it has not, he may." Id. (quoting

---

[2] See Commonwealth v. Finley, 479 A.2d 568 (Pa. 1984) (In representing a PCRA petitioner, counsel may move to withdraw from a case, if after certifying to an exhaustive reading of the record, he finds that there are no non-frivolous issues that could be raised in a petition).

[3] Rule 907(1) of the Pennsylvania Rules of Criminal Procedure provides that "the judge shall promptly review the [PCRA] petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claims. If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within twenty days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue."

4

Commonwealth v. Judge, 797 A.2d 250, 258 (Pa. 2002); see also Commonwealth v. Deemer, 705 A.2d 827, 829 (Pa. 1997) (a fugitive appellant forfeits his appellate rights if the time for filing an appeal passes while he is still a fugitive)). The Superior Court found that Mr. Sierra's time for filing a PCRA petition had elapsed while he was a fugitive, and thus, he forfeited his right to file a PCRA petition. Id. Mr. Sierra filed his *habeas* petition in this court over two years later.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a petition for *habeas corpus* may be granted only if (1) the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

Where a petition for writ of *habeas corpus* has been referred to a magistrate judge for a report and recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . . [T]he court may accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge." See 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

Mr. Sierra filed timely Objections to Judge Lloret's Report and Recommendation. With little specificity, he indicates that he "objects to the findings and recommendations of Judge Lloret." Accordingly, I will address the judge's dispositive findings in turn.

### A. Timeliness

Mr. Sierra does not specifically object to Judge Lloret's determination that Mr. Sierra's petition for writ of *habeas corpus* is untimely. Nevertheless, upon *de novo* review, I must agree with Judge Lloret that this petition is untimely and does not qualify for any equitable considerations.

    1. Statutory Tolling

With the passage of the AEDPA, Congress enacted a one-year limitations period for federal *habeas corpus* petitions. See 28 U.S.C. § 2244(d). This one-year limitations period is subject to both statutory and equitable tolling. An application for federal *habeas* relief must be filed within one year of the latest of four dates listed in Section 2244(d)(1),[4] which states in relevant part:

>  (d)(1)   A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in

---

[4] In his reply to the Commonwealth's response to the Objections, Mr. Sierra quotes a similar but inapplicable statute, i.e., 28 U.S.C. § 2255, to outline the four potential starting points for the one-year limitations period. Section 2255(f) uses language very similar to Section 2244(d)(1), but pertains to petitioners in federal custody who seek to vacate, set aside, or correct their federal convictions. Further, while he indicates that his petition falls under the second starting point, it is apparent from the emphasis he added to the text that he meant to indicate the third starting point.

>    custody pursuant to a judgment of a State court. The limitation period shall run from the latest of —
>
>    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). I am not persuaded by Mr. Sierra's argument that 28 U.S.C. § 2244(d)(1)'s third option is applicable to his case. First, he insists that his *habeas* petition is timely because he filed it within one year of the Supreme Court's decision in McQuiggin v. Perkins, 133 S.Ct. 1924 (2013). Unfortunately for Mr. Sierra, the McQuiggin decision does not provide the relief he seeks. In McQuiggin, the Court did not announce a newly recognized constitutional right. Instead, the Court clarified and broadened its holding in Schlup v. Delo, which had announced that the actual innocence test required a petitioner to supplement his claim with new, reliable evidence of factual innocence. 513 U.S. 298, 324 (1995). Thus, McQuiggin was not the first case to recognize that "a prisoner '. . . may have his federal constitutional claim considered on

the merits if he makes a proper showing of actual innocence.'" McQuiggin, 133 S. Ct. at 1931 (quoting Herrera v. Collins, 506 U.S. 390, 404-05 (1993)).  Accordingly, McQuiggin cannot provide Mr. Sierra with an alternative start date for the one-year limitations period.

Second, Mr. Sierra also argues that his petition should be considered timely because of the Supreme Court's decision in Martinez v. Ryan, 132 S.Ct. 1309 (2012). Apparently attempting to be excused for not filing within a year of the Martinez decision, Mr. Sierra insists that as soon as he heard about the decision, he filed his *habeas* petition. The Martinez decision, however, can offer Mr. Sierra no relief.  The Court of Appeals for the Third Circuit has held that Martinez did not announce a new constitutional rule or right for criminal defendants, but rather an equitable rule prescribing and expanding the opportunity for review of their Sixth Amendment claims.  Cox v. Horn, 757 F.3d 113, 124 (3d Cir. 2014) (citing Martinez, 132 S.Ct. at 1319).  While the Supreme Court in Martinez held that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," see Martinez, 132 S. Ct. at 1315, the Court has not announced that the same ineffective assistance may justify exceeding the statute of limitations.  See Carter v. Walsh, No. 12-4357, 2013 U.S. Dist. LEXIS 27631 (E.D. Pa. Feb. 26, 2013);  see also Peeples v. Citta, Nos. 11-6238, 12-2203, 2012 U.S. Dist. LEXIS 52895, at *21 n.10 (D.N.J. Apr.16, 2012) (Martinez does not provide a basis for equitable tolling); Stromberg v.Varano, 2012 U.S. Dist. LEXIS 95877, at *18 n.37 ("Martinez is not controlling in this case because the court denied the petition as time-barred, not

procedurally defaulted.  Furthermore, the consideration of procedurally defaulted claims does not alleviate a petitioner's burden to overcome [the one-year] statute of limitations or to prove the merits of his case.")  Thus, Martinez can also not provide Mr. Sierra with an alternative start date for the AEDPA limitations period, and the third option of § 2244(d) is inapplicable.

Notwithstanding Mr. Sierra's insistence to the contrary, the only relevant option for a start date in this action is the first one, i.e., the date on which Mr. Sierra's judgment became final.  In early 2002, Mr. Sierra was tried and sentenced *in absentia* after it was established that he was aware of the scheduled trial date but willfully failed to appear.[5]  His conviction and sentence became final on April 27, 2002, when the time to file an appeal expired.  Thus, Mr. Sierra had until April 27, 2003 to seek state post-conviction relief.  He remained a fugitive until apprehended in October 2004, and began serving his sentence shortly thereafter.  A year later, Mr. Sierra filed a petition for PCRA relief.  In

---

[5] In addressing the issue of Mr. Sierra's having been tried and sentenced *in absentia*, the PCRA court stated:
> On August 6, 2001, [Mr. Sierra] signed a subpoena to appear for trial.  The back of the subpoena states the following:
>> "The subpoena signed by you requires your presence for either trial or preliminary hearing.  You are hereby advised, if you fail to appear, the Court may proceed in your absence.  You are further advised that a bench warrant for your arrest may also be issued."
>
> The Commonwealth presented evidence detailing all the steps taken in the investigation to locate [Mr. Sierra].  This investigation started in October, 2001 and ended just before trial in February, 2002.  This investigation included a detective checking, numerous times, [Mr. Sierra's] known residences, the prison system, the five local hospitals closest to his residence, the military, and the homes of relatives.  The court found that [Mr. Sierra] was absent from trial and sentencing without good cause.

See Commonwealth v. Sierra, May, 2001 No. 0160, at 4-5 (Ct.Com.Pl., Phila. Cnty., September 21, 2006).

December 2009, the PCRA court dismissed the petition as untimely, a decision affirmed by the Superior Court of Pennsylvania on January 3, 2011.

In October 2013, more than eleven years after his conviction became final, Mr. Sierra filed an untimely petition for writ of *habeas corpus* in this court. Even if it could be argued that the one-year limitations period should commence when the Superior Court affirmed the PCRA court's dismissal, this *habeas* petition would still be untimely because Mr. Sierra waited more than two and a half years after the Superior Court's decision before filing his petition. Thus, there is no doubt that Mr. Sierra sought federal *habeas* relief well outside the one-year limitations period, and is statutorily time-barred. See 28 U.S.C. § 2244(d).

2. Equitable Tolling

The Supreme Court of the United States has held that the *habeas* time bar is not jurisdictional, but is instead subject to equitable tolling. Holland v. Florida, 560 U.S. 631 (2010). In Holland, the Court held that equitable tolling is proper only where the petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance[6] stood in his way and prevented timely filing." Id. at 649 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The diligence required for equitable tolling purposes is 'reasonable diligence.'" Holland, 560 U.S. at 653 (citing Lonchar v. Thomas, 517 U.S. 314, 326 (1996)); see also LaCava v. Kyler, 398 F.3d. 271, 277 (3d Cir. 2005) (petitioner must exercise reasonable diligence in exhausting state

---

[6] I note that "in non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

10

remedies and bringing federal *habeas* petition); Schlueter v. Varner, 384 F.3d 69, 77-78 (3d Cir. 2004) (petitioner must exercise diligence even when there is attorney malfeasance).

The Supreme Court further explained that the "exercise of a court's equity powers . . . must be made on a case-by-case basis." Holland, 560 U.S. at 649-650 (quoting Baggett v. Bullitt, 377 U.S. 360, 375 (1964)); see also Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011) (there are no bright lines in determining whether equitable tolling is warranted in a given case); Miller v. N.J. State Dept. of Corr., 145 F.3d 616, 618 (3d Cir. 1988) (equitable tolling appropriate where "principles of equity would make [the] rigid application [of a limitation period] unfair").

The Third Circuit has enumerated several circumstances where equitable tolling is permitted: (1) if the Commonwealth has actively misled the petitioner, (2) if the petitioner has in some extraordinary way been prevented from asserting his or her rights, (3) if the petitioner has timely asserted rights but has mistakenly done so in the wrong forum, or (4) if the petitioner received inadequate notice of the right to file suit, a motion for appointment of counsel is pending, or the court has misled the petitioner into believing that he or she has done everything required. See Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). The Third Circuit also emphasized that equitable tolling should be applied sparingly. LaCava, 398 F.3d. at 275.

None of the scenarios contemplated by the Supreme Court or the Third Circuit is applicable here. As Judge Lloret properly found, Mr. Sierra is not entitled to equitable tolling, and for that, only he is to blame. His untimely filing is the result of his willful

11

failure to appear at trial and at sentencing, and his decision to remain a fugitive for over two years.  See Simpson v. Corbett, 2012 U.S. Dist. LEXIS 67107, *3 (E.D. Pa. May 14, 2012) ("the irony is not lost on this court that Petitioner claims it was the Commonwealth's *in absentia* proceedings that impeded his ability to comply with AEDPA's deadline, when those proceedings took place only because Petitioner willfully absconded on the day the verdict was announced . . . and remained a fugitive of justice for over two years.")  Furthermore, because Mr. Sierra chose to not appear at trial and to remain a fugitive, he is obligated to take the justice system as he found it when he was apprehended in October 2004.  See Judge, 797 A.2d at 258.  By then, the statute of limitations for filing a petition for writ of *habeas corpus* had expired.  Mr. Sierra has neither diligently pursued his rights, nor presented extraordinary circumstances which prevented him from filing a timely *habeas* petition.  Instead, he became a fugitive who attempted to evade the criminal charges against him.  Accordingly, I find that Mr. Sierra is not entitled to the application of equitable tolling.

       3.  Actual Innocence

Nevertheless, to avoid a miscarriage of justice, a federal court may entertain a Section 2254 *habeas corpus* petition where that petition raises a convincing claim of actual innocence even if the statute of limitations for such a petition has expired.  See McQuiggin v. Perkins, 133 S.Ct. 1924, 1934-35 (2013).  In McQuiggin, the Supreme Court repeated the standard required for a successful actual innocence claim no less than four times.  First, the Court held:

> Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the *new* evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."

Id. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)) (emphasis added). The Court later reiterated the standard:

> AEDPA's time limitations apply to the typical case in which no allegation of actual innocence is made. The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which *new* evidence shows "it is more likely than not that no reasonable juror would have convicted [the petitioner]."

McQuiggin, 133 S.Ct. at 1933 (quoting Schlup, 513 U.S. at 329) (emphasis added). At a third point in the decision, the Supreme Court stressed, "to invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" McQuiggin, 133 S.Ct. at 1935 (quoting Schlup, 513 U.S. at 327). Finally, for a fourth time, the Supreme Court emphasized:

> We stress once again that the Schlup standard is demanding. The gateway should open only when a petition presents "evidence of innocence *so strong* that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error."

13

Id. at 1936 (quoting Schlup, 513 U.S. at 316) (emphasis added). There is no doubt, then, that a petitioner, like Mr. Sierra, bears a heavy burden in order to meet the threshold requirement for a claim of actual innocence. Mr. Sierra fails to meet that demanding standard.

In his Objections, Mr. Sierra hints that his being actually innocent should permit his petition to be decided on its merits. It is not until his reply to the Commonwealth's response to the Objections (Document #22), that Mr. Sierra attempts to prove his innocence by pointing to portions of the trial testimony and offering the theory that a passenger in his car must have been the shooter, rather than him. This proposed theory is at odds with the verdict of the jury. In fact, all of the evidence Mr. Sierra addresses in his reply was available and presented to the jury at trial. The jury then determined that Mr. Sierra was guilty of the crimes charged against him, thereby implicitly rejecting any other theory of guilt. Mr. Sierra offers no new evidence[7] of actual innocence as required by McQuiggin and Schlup, let alone evidence strong enough to show that it is more likely than not that no reasonable juror would have convicted him. Thus, because Mr. Sierra fails to meet the stringent McQuiggin standard, there can be no equitable exception to the statute of limitations applied in this case. See Burton v. Horn, 2015 U.S. App. LEXIS 9578, *10 (3d Cir. 2015) (when an inmate does not make a convincing demonstration of his actual innocence, he is not eligible for the actual innocence exception to the 28 U.S.C. § 2244(d) time-bar).

---

[7] Instead of new evidence to show actual innocence, Mr. Sierra offers an explanation for why he did not appear at trial or sentencing. This explanation, however, has no impact on his claim of actual innocence of the crimes for which he was charged and convicted.

14

### B. Certificate of Appealability

Judge Lloret recommended that I decline to issue a certificate of appealability. For a certificate of appealability to issue when a court denies a *habeas* petition on procedural grounds without reaching the underlying constitutional claim, the petitioner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

I have determined that this Section 2254 *habeas* petition is untimely and not entitled to any equitable consideration. Reasonable jurists would not debate the correctness of this conclusion. See id. (where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further). Accordingly, I will decline to issue a certificate of appealability.

### C. Conclusion

Mr. Sierra became a fugitive rather than face charges of attempted murder, criminal conspiracy, aggravated assault, possession of an instrument of crime, and violation of the Uniform Firearms Act. After the trial court determined that he was absent without good cause, Mr. Sierra was tried and sentenced *in absentia*. While he was a fugitive, the statutes of limitations for both PCRA and *habeas corpus* relief expired. The McQuiggin and Martinez cases are inapposite because Mr. Sierra's claims are time-barred, not necessarily procedurally defaulted, and he has presented no new evidence to

15

support a claim of actual innocence.  His petition for writ of *habeas corpus* is not entitled to either statutory or equitable tolling.  I will overrule Mr. Sierra's Objections, approve and adopt Judge Lloret's well-reasoned Report and Recommendation, and deny Mr. Sierra's petition for writ of *habeas corpus* with prejudice.

  An appropriate Order follows.